Velma River, Plaintiff-Appellant, v. Atlantic & Pacific Tea Company, a Corporation, Defendant-Appellee.

Gen. No. 61–F–2.

Fourth District.

June 1, 1961.

John A. Bock, Jr. & John R. Sprague, of Belleville, for appellant.

Wagner, Conner, Ferguson, Bertrand & Baker, of East St. Louis, for appellee.

HOFFMAN, JUSTICE.

The action in this case was brought to recover for injuries sustained by plaintiff resulting from a fall in the doorway of defendant's store. The jury awarded plaintiff a verdict of $4,000.00, but the trial judge, upon defendant's post-trial motion, entered judgment notwithstanding for defendant and, in the event of the reversal of such order, awarded defendant a new trial. Plaintiff appeals, asking that her judgment be reinstated.

The salient facts are these: The exit door of defendant's store is suspended above a rubber mat which is secured underneath the door and along its edges by

metal stripping. The door opens automatically when one's foot is placed on the rubber mat. The metal stripping on each side of the rubber mat does not go all the way to the door and there join the other stripping at the door. On the contrary, there is a space or gap where there is no metal strip or rubber matting, which gap is approximately $2\frac{1}{2}''$ x $1\frac{1}{2}''$ in dimensions, and of slight, but varying, depth. On the day in question, plaintiff was a customer in defendant's store. She had completed her purchases and was walking from the store with two large bags of groceries, one under each arm. She testified that she first stepped onto the rubber mat with her right foot and then she stepped onto the metal strip with her left foot. She stated that her foot slipped off of the metal strip and into the gap, that her foot went out from under her and she fell. This statement was corroborated by the testimony of her husband. There was no other evidence regarding the exact manner in which plaintiff fell. At the time, plaintiff was wearing leather soled shoes with low heels about $1\frac{1}{2}''$ wide. The weather was dry and there was no evidence of any foreign substance being on the mat, the strip or on plaintiff's shoe.

The primary issue here is whether or not these facts present sufficient evidence of defendant's negligence to submit this cause to the jury.

██ The plaintiff here enjoyed the status of a business invitee upon defendant's premises. As such, it is generally held that the storekeeper is not the insurer of his customer's safety, but that he does owe the duty of keeping his premises in a reasonably safe condition so that customers will not be injured (Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 125 N.E.2d 47), and he must provide a safe means of entrance and exit. Todd v. S. S. Kresge Co., 384 Ill. 524, 52 N.E.2d 206. There cannot be liability without fault (Olinger

235

v. Great Atlantic & Pacific Tea Co., 21 Ill.2d 469, 173 N.E.2d 443), but if reasonable men could not agree that the defendant's doorway here was in a safe condition, the cause must go to the jury unless the defect complained of did not contribute to plaintiff's fall.

Thus, the central problem is whether or not the gap or space in the doorway of defendant's premises, which is described above, created a dangerous condition which contributed to plaintiff's fall.

 The cases involving customers who fall in business establishments where dangerous or unsafe conditions are alleged to exist are many, and they are found in nearly every jurisdiction. It would serve no useful purpose to recite each and every of these cases in an encyclopedic manner. Although the results in these cases are not always consistent, running through all of them is the general rule that what constitutes a reasonably safe condition depends upon the nature of the use of, or activities conducted in, the building and the circumstances surrounding the particular situation. 65 C. J. S. Negligence, sec. 81. And, if there is positive evidence of defects in flooring, such as holes, worn boards or depressions, and some direct evidence, however slight, which associates plaintiff's fall with that defect, the problem becomes a jury question and verdicts for plaintiffs are usually affirmed. See for example: Swanson v. S. S. Kresge Co., 302 Ill. App. 455, 24 N.E.2d 62 (heel caught on raised metal strip on stairway); Howell v. Kroger Grocery and Baking Company, 178 S.W.2d 101 (slipping upon a worn and cracked threshold, the inner edge of which was commencing to sag); McCafferty v. Great Atlantic & Pacific Tea Co., 2 Fed. Supp. 963 (slipping in a ½″ depression in the floor near the door); Long v. F. W. Woolworth Co., 159 S.W.2d 619; Hastings v. F. W. Woolworth Co., 189 Minn. 523; Devine v. Kroger Grocery & Baking Co., 162 S.W.2d 813, and Ellin v. Rosen-

berg, 188 Atl. 499 (heel caught in small hole in floor); Grigsby v. Morgan and Lindsey, 148 So. 506 (heel caught in opening where floor boards did not reach a floor level ventilator); Kennedy v. Cherry & Webb, 267 Mass. 217 (toe caught upon a projection over the end of a ramp); Haverkost v. Sears Roebuck & Co., 193 S.W.2d 357 (tripping over a metal plate projecting ⅛ to ¼″ above floor). No sound reason can be advanced why a person should be excused from liability for injuries when he permits or invites his patrons to use an unsafe means of ingress and egress to and from his store. Steinberg v. Northern Illinois Tel. Co., 260 Ill. App. 538, 542.

Where, however, the fall occurs upon a floor not having any depression, concavity, hole or other defective condition and there is nothing upon which the jury can reasonably find negligence, it is improper to submit the case to the jury. Robinson v. Southwestern Bell Tel. Co., 26 Ill.App.2d 139, 167 N.E.2d 793; Clark v. Carson Pirie Scott and Co., 340 Ill. App. 260, 91 N.E.2d 452.

In applying the instant facts to the rules above delineated, consideration must be given not only to the small space or gap associated with plaintiff's fall but also to other facts, such as the purpose for which the doorway was designed, and that it was likely to be used by large numbers of persons of varying degrees of physical strength and activity, and of all ages, and that the attention of such persons might very probably at times be diverted by things about them or their vision might be obstructed by large sacks they might be carrying. Actually, the purpose in constructing a self-opening door was, in part, to enable patrons to carry more and otherwise occupy their arms. Under such circumstances, ordinary care required the defendant not only to see that the doorway's construction was reasonably safe but that it was maintained in that con-

dition. The trial court reached the conclusion that the facts in this case were not legally sufficient to permit any rational inference that defendant had failed to discharge this obligation. With this we cannot agree.

The evidence shows that the rubber mat and doorway to defendant's store had been unchanged for several years prior to this accident and that during that time many hundreds of persons each week had entered and left defendant's store through this doorway. The evidence further shows that as plaintiff left the store with two large bags of groceries under her arms, she could not look directly down towards the rubber mat and metal stripping. Her testimony that her foot slipped off the metal stripping and into the gap in the stripping and matting, whereupon she fell, stands uncontradicted in the record. Pictures of the doorway, introduced both by plaintiff and defendant, which we have carefully examined, clearly indicate the physical possibility that the accident could have happened the way she described it. We cannot say, as a matter of law, when we consider the intended use of this doorway, that it presented a reasonably safe condition to plaintiff on the day of the accident. On the contrary, upon the record before us, we conclude that reasonable men *could* agree that the condition of defendant's entranceway was dangerous and that plaintiff's fall was directly referable to this condition without fault on her part. For this reason we conclude that it was the jury's, not the court's, province to decide liability here, and the order of the court entering judgment notwithstanding was error.

But the defendant argues that ". . . it is axiomatic that the defendant is not an insurer of the safety of patrons of the store and, at most, can only be held to that degree of care which a reasonably prudent individual would use in constructing and maintaining an entranceway in a like location under the same or similar circumstances." Surely, this court cannot say, as

238

a matter of law, that the construction here, leaving the gaps in the floor as it did, is a proper exercise of due care.

And the defendant argues further that ". . . the entire evidence as to there being any defect at defendant's premises is inherently improbable by common knowledge and experience of mankind and, consequently, must be rejected." To this we answer that it is not inherently improbable to us, nor was it to the jury. Finally, defendant goes on to say that "such condition did not constitute the maintenance of a defective or dangerous condition in that it was the normal and commonplace type of construction for the type of exitway in use by many public buildings." There is a complete lack of evidence to substantiate this argument, either directly or inferentially.

Because we are reversing the trial court's order of judgment notwithstanding, we now must turn to the alternative order awarding a new trial in this situation.

■ The court allowed the motion for new trial without specifying the ground for his action. In its motion for a new trial the defendant listed various errors in the giving and refusing of certain instructions, and in permitting incompetent evidence of a medical nature; it also complained that the verdict was against the manifest weight of the evidence. On appeal, the only effort made by the defendant to sustain the court's action in granting the motion for a new trial was defendant's argument that the trial judge has a broad discretion and that the reviewing court cannot interfere unless the trial judge was clearly wrong. There is no reference in the brief or argument to the errors claimed in any instruction or to improper medical evidence. We are not required to review error not argued. See Appellate Court Rule 7 (Ill. Rev. Stat. 1959, chap. 110, par. 201.7). We have nevertheless reviewed the instructions and it is our opinion

that the trial court fairly instructed the jury as to the issues in the case and that there was no reversible error in the court's instructions.

We have also reviewed the medical testimony and find that there was no basis whatsoever for defendant's assailing this evidence in its motion for new trial.

█ Nor is this court going to say that the verdict is excessive. The accident happened on June 13, 1959 and the trial was commenced March 22, 1960, approximately 9 months later. After the injury, the plaintiff went to the hospital that evening because of her pain and she stayed until the following Monday. She complained of pain in her leg and lower back. The following Monday she went to the doctor's office and had an examination. On June 30 she visited a doctor in Belleville and he prescribed medicine and had x-rays taken. She continued to see the doctors up to March 2, 1960. Sometimes she went once a week, sometimes every two weeks, sometimes once a month. At the time of the trial she was wearing a back support which was prescribed for her by Drs. Hill and Cole, two or three months previously. At the trial she had pain across the lower back. Her right leg was numb at times. There was numbness and pain in her right leg at different times. Dr. Lloyd James Hill, an orthopedic surgeon, testified that the fall in the defendant's store might or could have caused the complaints of pain in the lower back of the plaintiff. The medical testimony reasonably supports the verdict.

█ █ We do not feel that we must, without any reason or argument, sustain the action of the trial court in granting a new trial. We know full well that a trial court is allowed greater latitude in granting a new trial than denying one, and that there will be no review of the trial court's action unless there is a clear abuse of discretion. However, the Civil Practice Act clearly provides for a review of an order allowing a

240

new trial and when we feel that the action is not sustained by the record we need not subscribe to it.

The evidence in this case was not conflicting. The entire case was made out of the evidence surrounding the construction of the entranceway. There was no substantial dispute of any fact or material issue. The plaintiff's conduct was explained by herself. We believe there was a fair trial and can see no justification requiring that a second jury re-determine whether or not the condition was sufficient to constitute liability.

Accordingly, the orders of the trial court entering judgment notwithstanding and for a new trial are both reversed and this cause is remanded with directions to reinstate judgment for plaintiff upon the jury's verdict.

Reversed and remanded with directions.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.